STATE of Indiana, Appellant–Plaintiff,

v.

James PETERS, Appellee–Defendant.

No. 18A05–9302–CR–00048.

Court of Appeals of Indiana,
Fifth District.

May 31, 1994.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant.

Joseph P. Hunter, Muncie, for appellee.

RUCKER, Judge.

The State appeals the trial court's dismissal of Count I of an indictment against Defendant–Appellee James Peters. The State raises one issue for our review which we separate and rephrase as:

1) Whether the trial court erred in dismissing the charge?

2) Whether the trial court erred in failing to enter findings of fact in support of its order?

We affirm.

On May 27, 1992, Peters was called before the Delaware County Grand Jury to testify concerning the alleged illegal use of materials at a city sign shop where he was employed. Prior to testifying, Peters was granted immunity from prosecution pursuant to Ind.Code § 35–34–2–8.[1] On July 16, 1992, the grand jury issued an indictment against Peters charging him with Count I, Theft of materials from the sign shop and Count II, Perjury during his grand jury testimony. Peters moved to dismiss Count I of the indictment alleging, *inter alia*, that he could not be indicted by the same grand jury which heard his immunized testimony. At a hearing on the motion, Peters requested that the trial court take judicial notice of the Request for Use Immunity, Order Granting Use Immunity and the transcript of Peters' testimony before the grand jury. The trial court took the matter under advisement, and on December 29, 1992, entered an order dismissing Count I of the indictment. The State thereafter petitioned the court to allow an interlocutory appeal pursuant to Ind. Appellate Rule 4(B)(6). The trial court granted the petition, certifying that its order involved a substantial question of law, namely "whether a defendant may be indicted by a grand jury after having been granted testimonial immunity by the same grand jury, upon the substantive charge about which his testimony was immunized." *Record* at 61. Upon peti-

---

1. Ind.Code § 35–34–2–8 grants both use and derivative use immunity, providing that "any evidence the witness gives before the grand jury, or evidence derived from that evidence, may not be used in any criminal prosecution against that witness ... A grant of use immunity does not prohibit the use of evidence the witness gives in a prosecution for perjury ..." *See In re Caito* (1984), Ind., 459 N.E.2d 1179, *cert. denied*, 469 U.S. 805, 105 S.Ct. 62, 83 L.Ed.2d 13.

tion by the State, this court accepted the appeal.

While the appeal was pending, the trial court entered an "Order Correcting and Supplementing the Record" which advised that the court "took judicial notice of the Request for Order of Use Immunity, the Order Granting Use Immunity and the transcript of the Grand Jury Testimony of James Peters." *Supplemental Record* at 143. The order further provided:

From said documents the Court found that the defendant, James Peters, was granted use and derivative use immunity on or about May 27, 1992, and was indicted by the same Grand Jury who heard his immunized testimony. Such findings were the basis for the Order, entered December 29, 1992, dismissing Count I herein.

*Supplemental Record* at 143.

■ Before discussing the merits of this appeal, we first address various jurisdictional and procedural challenges raised by Peters. Peters first claims that this court lacks jurisdiction to hear the appeal because it was initiated pursuant to Ind. Appellate Rule 4(B)(6). According to Peters, that rule confers no jurisdiction upon the appellate courts to hear an interlocutory appeal by the state, citing *State v. McMillan* (1980), 274 Ind. 167, 409 N.E.2d 612, *cert. denied*, (1981), 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207. It is true that the State may appeal only when authorized by statute. *State v. Hicks* (1983), Ind., 453 N.E.2d 1014. It is also true that prior to 1983, the statutes contained no authorization for the State to take an interlocutory appeal. However, in 1983 the legislature enacted Ind.Code § 35–38–4–2(6), incorporating the interlocutory appeal provisions of A.R. 4(B)(6) into the statute authorizing appeals by the State. Thus, pursuant to I.C. § 35–38–4–2(6), the State may appeal interlocutory orders in the same manner as provided by the appellate rule. The fact that the State in this case appealed pursuant to A.R. 4(B)(6) instead of I.C. § 35–38–4–2(6) is therefore of no moment. This court may properly accept jurisdiction of the appeal.

■ Peters next contends the State may not appeal the trial court's order because the order dismisses only one count of a two-count indictment. In support, Peters cites *State v. Evansville & T.H.R. Co.* (1886), 107 Ind. 581, 8 N.E. 619, in which the court held the State could not appeal an order dismissing one count of a two-count information because the order was not a final judgment. However, *Evansville* was decided prior to the enactment of I.C. § 35–38–4–2(6) which authorizes the State to pursue such interlocutory appeals. Peters' argument that the appeal in this case is unauthorized is therefore without merit.

■ Next, Peters claims the State is bound by the question certified by the trial court for appeal namely "whether a defendant may be indicted by a grand jury after having been granted testimonial immunity by the same grand jury, upon the substantive charge about which his testimony was immunized." Accordingly, Peters argues, the State is precluded from making any argument not directly related to that question.

Indiana Code § 35–38–4–2(6) provides that the State may appeal:

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(A) The appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

(B) The order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

(C) The remedy by appeal after judgment is otherwise inadequate.

The foregoing section makes no provision for certifying *questions* to the appellate court. Rather, the statute provides that the State may appeal an interlocutory *order* if the trial court certifies and the court on appeal finds that one of the three conditions in the statute exist. Here, the trial court certified that the condition found in subsection (B) of the statute is present in this case, namely that the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case. On petition by Peters, this court found the

existence of the same condition. Because the statutory requirements have been met, the State may appeal the trial court's order, raising such issues as it deems appropriate. *See Dingman v. State* (1992), Ind.App., 602 N.E.2d 184; *Methodist Hospital, Inc. v. Ray* (1990), Ind.App., 551 N.E.2d 463 *adopted,* 558 N.E.2d 829 (discussing the identical provisions of Ind. Appellate Rule 4(B)(6)). Preliminary issues aside, we now address the merits of this appeal.

## I.

In *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, *reh'g denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345, the United States Supreme Court determined that a grant of use and derivative use immunity is coextensive with the Fifth Amendment privilege against self-incrimination and that a witness granted such immunity may thus be compelled to testify despite his claim of the privilege. Any testimony so compelled may not be used against the witness in *any* respect, thus insuring that the testimony cannot lead to the infliction of criminal penalties on the witness. *Id.* at 453, 92 S.Ct. at 1661. In order to enforce this proscription, once a defendant demonstrates that he has testified pursuant to a grant of immunity to matters related to the prosecution, the prosecuting authorities "have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Id.* at 460, 92 S.Ct. at 1665, *citing Murphy v. Waterfront Comm'n* (1964), 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. This burden of proof is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. *Id.*

On several occasions, the federal courts have examined whether the government met its burden of proof under *Kastigar* where a witness is indicted by a grand jury which earlier heard the witness's immunized testimony on related matters. Although to differing degrees, each court addressing the question has recognized that the inquiry into the direct or derivative use of immunized testimony is severely complicated where everything was done before one grand jury. As the court observed in *United States v. Garrett,* 797 F.2d 656, 664 (8th Cir.1986), "[i]t is quite likely that the immunized testimony was taken into account in some conscious or subconscious way." Even where the testimony was substantially exculpatory, jurors can draw an inference of guilt from the act or manner of denial, which could not have been drawn had the witness been permitted to assert the Fifth Amendment privilege. *Id.* at 662. In addition, asking a grand jury to indict an immunized witness affords the prosecution the opportunity to take advantage of the "subtle ways in which ... compelled testimony may disadvantage a witness." *Id.* at 664. Moreover, even if a given grand jury is able to ignore the previous immunized interrogation and indict the witness on wholly independent evidence, the process appears tainted and thus the integrity of the judicial process may be questioned. *Id.*

While sharing the foregoing concerns, the courts have differed in their approach to the problem. In *United States v. Hinton,* 543 F.2d 1002 (2d Cir.1976), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589, the second circuit adopted a *per se* rule of dismissal of any indictment secured from the same grand jury who heard the witness's immunized testimony. The court found "impractical and unpalatable" the prospect of "peering into the grand jurors' minds" or examining them individually, in order to ascertain whether the testimony was improperly used. *Id.* at 1010. Because it would be "virtually impossible" for the government to prove an independent source for the indictment, the court concluded the only effective method of safeguarding the defendant's rights was dismissal of the charges. *Id.* at 1007, 1010; *see also United States v. Tantalo,* 680 F.2d 903 (2d Cir.1982); *United States v. Anzalone,* 560 F.2d 492 (2d Cir.1977) *cert. denied,* (1978), 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760.

Other courts have disagreed. In *Garrett,* the court acknowledged that in some cases it may be impossible for the prosecution to meet its "heavy burden" of proving a wholly independent source. 797 F.2d at 663–64.

However, in other cases such as where the immunized testimony was relatively brief or where events before or after the testimony are undeniably the source for the evidence presented to the grand jury, the government may be able to establish that the indictment rests upon evidence independent of the immunized testimony. *Id.* at 663. A rule requiring outright dismissal of the indictment is therefore unnecessary. *Id.* Rather, in order to safeguard the defendant's interests, the court required an evidentiary hearing to determine whether the testimony was improperly employed. Such a hearing, at which the government's proof is subjected to adversarial examination and criticism, would also help deter prosecutorial misconduct and protect the integrity of the judicial process. *Id.* at 664–65. Other courts have adopted a similar approach. *See United States v. North,* 910 F.2d 843, 870 (D.C.Cir.1990), *reh'g granted in part and denied in part,* 920 F.2d 940, *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991) (rejecting Hinton's *per se* rule of dismissal); *United States v. Zielezinski,* 740 F.2d 727 (9th Cir.1984), (requiring an evidentiary hearing in case of grand jury's indictment of witness who testified before it pursuant to grant of immunity); *United States v. Lipkis,* 770 F.2d 1447 (9th Cir.1985), (no hearing required where defendant conceded that only minimal differences existed between his nonimmunized statements, the alleged basis for the indictment, and his later immunized admissions before the same federal agency).

Peters urges this court to adopt the rule in *Hinton* that a defendant may not be indicted by the same grand jury which heard his immunized testimony. Peters does not claim such a rule is constitutionally required, and indeed the cases and commentary following *Hinton* make clear that its mandate is not constitutional in nature but is rather an exercise of that court's supervisory powers.[2] *Garrett,* 797 F.2d at 660; *Zielezinski,* 740 F.2d at 729; Yale Kamisar, et al., *Modern Criminal Procedure* 1041–42 n. d. (1980). Nor does Peters argue that Ind.Code § 35–34–1–8, the statute governing dismissal of indictments, is constitutionally infirm. That statute provides that after a motion to dismiss along with corresponding documentation has been filed, the court shall determine whether a hearing is necessary to resolve questions of fact. I.C. § 35–34–1–8(c). The court may deny the motion without conducting a hearing only if: (1) the motion alleges no legal basis for relief, or (2) the motion is based upon facts and does not contain sworn allegations supporting all the essential facts, or (3) an allegation of fact essential to support the motion is conclusively refuted by documentary evidence. I.C. § 35–34–1–8(e). If a hearing is necessary to resolve questions of fact, the court shall conduct a hearing and make findings of fact essential to the determination of the motion. I.C. § 35–34–1–8(f).

We believe the statutory requirement that the trial court conduct a hearing if necessary to resolve questions of fact provides sufficient safeguards to insure that a witness's immunized testimony will not subsequently be used against him. We therefore decline to adopt *Hinton's per se* rule of dismissal.

We caution, however, against the practice of securing an indictment of a witness from the same grand jury which heard the witness's immunized testimony. Even if proper, the indictment appears tainted. *See Zielezinski,* 740 F.2d at 733. If it is necessary to seek indictment of an immunized witness, the better practice is to assemble a new, untainted grand jury and to present to it the independent evidence. The additional effort and time involved in such a practice is well expended in order to avoid the appearance of impropriety.

■■■ Despite our rejection of a rule requiring automatic dismissal, our inquiry does not end here. Once a defendant demonstrates that he has testified pursuant to a grant of immunity to matters related to the prosecution, the State has the burden of showing an independent, legitimate source for the disputed evidence. *Kastigar,* 406 U.S. at 460, 92 S.Ct. at 1665. Peters made the initial showing because the trial court took judicial notice of the Request for Use Immunity, Order Granting Use Immunity

---

**2.** The supervisory powers of the federal courts allow formulation of procedural rules not specifically required by the Constitution. *United States v. Zielezinski,* 740 F.2d 727 (9th Cir.1984).

and transcript of Peters' testimony before the grand jury.[3] Peters was later indicted by the same grand jury on a charge related to the matters under its investigation. Despite this showing, the State presented no evidence that the indictment rested upon evidence independent of Peters' testimony. Instead, the State merely relied on the general denial contained in its response to Peters' motion to dismiss. Because the State failed to meet its burden of proving an independent source for the indictment, Count I of the indictment was properly dismissed.

## . II.

The State also contends the trial court erred by failing to enter findings of fact in support of its order as required by I.C. § 35–34–1–8(f). That section provides that where a hearing is necessary to resolve questions of fact, the court shall conduct a hearing "and make findings of fact essential to the determination of the motion." At the time of its dismissal order, the court did not enter such findings. However, while this case was pending on appeal, the court signed a document entitled "Order Correcting and Supplementing Record" in which the court delineated its reasons for dismissing Count I of the indictment. The order was not a *nunc pro tunc* entry and was entered after jurisdiction had been removed from the trial court and acquired by the court of appeals. The order therefore cannot suffice to meet the statutory requirement of written findings. Nevertheless, the purpose of written findings is to aid this court in our review of the trial court's actions. *Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103, *trans. denied.* Because the "Order Correcting and Supplementing Record" sufficiently articulates the basis for the trial court's decision, the failure to enter findings does not hinder our review. Likewise, the State does not claim that its argument on appeal is ham-

pered by the court's failure to enter findings. The error is therefore harmless.

Order affirmed.

SHARPNACK, C.J., and HOFFMAN, J., concur.

3. The State contends that the trial court erred in taking judicial notice of these documents because they are part of the grand jury investigation, a proceeding separate from the instant prosecution. It is true that a trial court may not take judicial notice of records in a prior, separate case even though the parties and subject matter are related. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850; *Bane v. State* (1991), Ind.App.,

579 N.E.2d 1339, *trans. denied.* However, it is equally true that a party may not sit idly by while error is committed and then raise the error for the first time on appeal. *State v. Keith* (1987), Ind.App., 507 N.E.2d 245. Failure to raise an objection before the trial court results in waiver of the issue for appellate review. *Id.* Here, the State did not object to Peters' request for judicial notice and has therefore waived any error.